Calvin L. ALSTON, Appellant,

v.

UNITED STATES, Appellee.

No. 90–835.

District of Columbia Court of Appeals.

Submitted March 21, 1991.

Decided April 30, 1991.

Calvin L. Alston filed a brief pro se.

Jay B. Stephens, U.S. Atty., John R. Fisher, Thomas J. Tourish, Jr., and Robert J. Spagnoletti, Asst. U.S. Attys., were on the brief for appellee.

Before ROGERS, Chief Judge, and FERREN and STEADMAN, Associate Judges.

FERREN, Associate Judge:

Calvin L. Alston appeals from a trial court order dismissing his *pro se* motion to correct sentence pursuant to D.C.Code § 23–110 (1989). He argues that, upon conviction as an adult for second-degree murder, his sentence should have commenced immediately and thus begun to run concurrently with, rather than consecutively to, a sentence he was serving in California under the Federal Youth Corrections Act. He also claims he is entitled to good time credits for all time served. Because the trial court lacked jurisdiction to consider the requested relief pursuant to § 23–110 or to consider the motion, alternatively, as a petition for writ of habeas corpus, we must affirm dismissal of the petition.

## I.

On July 18, 1984, Alston was charged with unlawful distribution of phencyclidine and cannabis, D.C.Code § 33–541 (1988), and unlawful possession of phencyclidine and cannabis with intent to distribute. *Id.* He pleaded guilty to the unlawful possession charge; the distribution charge was dropped. On August 21, 1985, Alston was sentenced to an indeterminate period of incarceration under the Federal Youth Corrections Act ("YCA"), 18 U.S.C. § 5010(b) (repealed 1984).[1]

On August 28, 1985, Alston and several codefendants were charged with kidnapping, armed robbery, and two counts of murder in the first degree. These charges arose out of events which had occurred before Alston received his YCA sentence. On October 25, 1985, Alston pleaded guilty to a single count of murder in the second degree, and the other charges were dropped. Alston was sentenced on the murder charge on June 18, 1986. The court rejected his request for sentencing under the YCA and instead imposed a prison term of 12 to 36 years. Because Alston had testified against several of his codefendants, the court requested that Alston be housed in a federal institution to protect his safety. Alston was sent to the Federal Correctional Institute in Terminal Island, California.

The prison authorities at Terminal Island refused Alston's request for parole from his YCA imprisonment so that he could begin serving his adult sentence immediately rather than consecutively. Because Terminal Island has no facilities for YCA offenders, however, Alston was housed with adult prisoners while he served his YCA sentence. Alston's YCA term expired on May 14, 1989, and he began serving his adult sentence on that date.

On February 23, 1989, Alston filed a *pro se* motion to correct his sentence pursuant to D.C.Code § 23–110 (1989). In the words of the trial court:

> In his pleadings, the defendant contends that the adult sentence imposed on him by this Court should have commenced immediately upon his arrival at Terminal Island, and that the federal authorities erred by treating that adult sentence as stayed until the completion of his prior imposed YCA sentence. The defendant now requests that this Court order the Bureau of Prisons to convert the time he spent incarcerated under the YCA at Terminal Island to adult time, and to grant him good time credit for the time he has served. Good time credits

1. Congress repealed the YCA by the Comprehensive Crime Control Act of 1984, effective October 12, 1984. *See* Pub.L.No. 98–473, Title II, § 218(a)(8), 98 Stat. 1837, 2027. However, the YCA is applicable—as here—to offenses committed before the effective date of repeal. *See United States v. Countryman,* 758 F.2d 574, 579 n. 2 (11th Cir.1985).

allow for deductions to be made in the time that a person must actually serve his or her sentence; yet, they are not provided for under the YCA.[2] The defendant makes this request on the grounds that it is simply unjust to detain him as an adult, in an adult facility, while, all along, denying him both the segregation benefits he was entitled to under the YCA and good time credits which would reduce his sentence.

The Government contends that this Court lacks jurisdiction to consider the defendant's claim under D.C.Code § 23–110. The Government further contends that the proper relief for the defendant is a petition for writ of *habeas corpus,* in the jurisdiction where the defendant is incarcerated. A petition brought in this Court, the Government argues, must be denied because this Court is without jurisdiction to grant the relief requested.

This Court is inclined to agree with the defendant's position.[3] However, the Court also is of the view that the Government is correct in its position that this Court is without jurisdiction to order the relief the defendant requests. As a result, the defendant's claim should be denied at this time on the grounds that a petition for habeas corpus should be filed in the district court in the jurisdiction where the defendant is incarcerated.

The trial court therefore dismissed the petition on May 29, 1990. Alston filed a timely appeal.

## II.

Under D.C.Code § 23–110, a prisoner may seek to vacate, set aside, or correct sentence on any of four grounds: (1) the sentence is unconstitutional or illegal; (2) the Superior Court did not have jurisdiction to impose the sentence; (3) the sentence exceeded the maximum authorized by law; or (4) the sentence is subject to collateral attack. Appellant does not claim the trial court lacked authority to impose an adult sentence consecutive to a YCA sentence. Nor does he claim that, in doing so, the court was legally required to assure that YCA treatment was preserved pending execution of the adult sentence.[4] Rather, appellant argues that, either as a matter of law or of equity, his YCA time served (without segregation from adult prisoners) should be converted into adult time and made subject to good time credits. *Compare Lewis v. Attorney General,* 878 F.2d 714 (3d Cir.1989), *and Johnson v. Rodgers,* 756 F.2d 79 (10th Cir.1985), *with Scott v. United States,* 778 F.2d 1444 (10th Cir. 1985) (per curiam).[5] Specifically, we under-

---

2. *See Lewis v. Attorney General,* 878 F.2d 714, 717–718 (3d Cir.1989).

3. We express no opinion on the merits of appellant's contentions.

4. In *Ralston v. Robinson,* 454 U.S. 201, 102 S.Ct. 233, 70 L.Ed.2d 345 (1981), the Supreme Court held that when a youth offender is sentenced to a consecutive adult term of imprisonment while serving a YCA sentence, the trial court "may require that the offender also serve the remainder of his youth sentence as an adult" if the court finds that continuing YCA treatment "would not benefit the offender further." *Id.* at 217, 102 S.Ct. at 244. The Court reached this result, in part, by noting that the trial court, in imposing an adult sentence for a second crime, "could have modified respondent's YCA treatment terms by imposing a concurrent sentence," and that "[i]t would be anomalous to permit a concurrent sentence to modify the terms of the remainder of a YCA sentence but not to permit a consecutive term to have that effect, since a concurrent sentence is traditionally imposed as

a *less* severe sanction than a consecutive sentence." *Id.* at 216 n. 9, 102 S.Ct. at 243 n. 9 (emphasis in original).

5. In *Lewis,* a prisoner serving a YCA sentence, who had not been segregated from adult prisoners, was convicted of a second offense—assaulting a prison guard—and sentenced to a consecutive term as an adult because the court found he no longer would benefit from YCA treatment. The court of appeals held that, although a YCA sentence as such was not subject to good time credits, the imposition of the consecutive adult sentence in effect transformed the balance of the YCA sentence into an adult sentence entitling the prisoner as a matter of law to good time credits beginning with the date of the court's finding he no longer would benefit from YCA treatment. 878 F.2d at 721. The *Lewis* court also noted that, although the prisoner was not legally entitled to good time credits for the period before the "no benefit" finding, the prisoner might equitably be entitled to such credits because of the prison authorities' failure to segregate him from adult prisoners. The court

stand appellant to be seeking (1) full credit on his adult sentence for YCA time served—in effect making the adult sentence retroactively concurrent with the YCA sentence—and (2) good time credits for all time served, as though that time was served under an adult, not a YCA, sentence.

■ Appellant's first argument, for a concurrent sentence, could have been—but was not—timely brought under Super.Ct. Crim.R. 35(b) (motion to reduce sentence) as a matter for trial court discretion. In this case, however, the 120–day time limitation for making a Rule 35 motion has long since expired. Thus, the trial court no longer would have jurisdiction under this rule even if appellant had invoked it. *See, e.g., Robinson v. United States,* 454 A.2d 810, 813 (D.C.1982).

■ In any event, as we understand appellant's motion and supporting memorandum, he does not seek discretionary relief under Rule 35. Nor does he seek, alternatively, an order clarifying that the trial court had really intended to impose the adult sentence concurrently with the YCA sentence. Rather, he accepts the fact that the trial court imposed a lawful, adult sentence consecutive to his YCA sentence. He thus argues for a change of sentence based on new circumstances. Specifically, he argues for legal or equitable relief in the form of retroactive imposition of a concurrent sentence, coupled with good time credits, based on the fact that (1) despite a YCA sentence he had never been segregated from adult prisoners in California, *see Johnson,* 756 F.2d at 81, and (2) his second

conviction formally transformed the balance of his YCA sentence into an adult sentence, *see Lewis,* 878 F.2d at 721.

Whatever their legal merit, these contentions, like claims by other prisoners challenging the computation of a sentence, may not be raised under § 23–110. Because such contentions concern the executive department's execution of sentence, not the trial court's imposition of sentence, they must be raised in a habeas corpus petition as the prisoners did in *Lewis, Johnson,* and *Scott. See Preiser v. Rodriguez,* 411 U.S. 475, 500, 93 S.Ct. 1827, 1841, 36 L.Ed.2d 439 (1973) (habeas corpus sole federal remedy for challenging imprisonment or seeking speedier release); *Chatman–Bey v. Thornburgh,* 274 U.S.App.D.C. 398, 404 n. 5, 864 F.2d 804, 810 n. 5 (1988) (habeas corpus sole remedy for challenging parole eligibility); *United States v. Monteer,* 556 F.2d 880, 880–81 (8th Cir.1977) (prisoner's request for restoration of good time credits challenges manner of execution of sentence, not sentence itself, and must be brought by habeas corpus); *see also Brame v. Palmer,* 510 A.2d 229 (D.C.1986) (prisoner serving new sentence after probation revocation filed petition for writ of habeas corpus seeking credit for time served on original sentence).[6] The trial court, therefore, lacked jurisdiction under § 23–110 to consider the relief appellant seeks.

■ If we were to treat appellant's motion as a petition for a writ of habeas corpus we would, once again, have to dismiss for lack of jurisdiction. District of Columbia courts may grant habeas corpus

---

further held, however, that because the prisoner had assaulted a prison guard, he was not equitably entitled to such credits in that case. *Id.* at 722–23. In *Johnson,* the court of appeals affirmed the award of good time credits for a YCA sentence on equitable grounds because the prisoner had received no YCA benefit—he had not been segregated from adult prisoners—while serving potentially a longer term than that of the maximum adult sentence. 756 F.2d at 81. In *Scott,* the court declined to grant good time credits for the period after a prisoner who violated parole (by committing burglary) was sent to an adult facility to serve the balance of his YCA sentence. 778 F.2d at 1446. The court saw this decision as a matter of declining to exercise

equitable power—a decision criticized by the *Lewis* court, which would have held the prisoner legally entitled to good time credits on these facts for the period after YCA status, in effect, had been revoked. 878 F.2d at 721.

6. We rely on federal cases declining jurisdiction under 28 U.S.C. § 2255, which is nearly identical and functionally equivalent to D.C.Code § 23–110. *See Swain v. Pressley,* 430 U.S. 372, 375, 381–82, 97 S.Ct. 1224, 1226, 1229–30, 51 L.Ed.2d 411 (1977); *Streater v. United States,* 429 A.2d 173, 174 (D.C.1980), *appeal dismissed* and *cert. denied,* 451 U.S. 902, 101 S.Ct. 1966, 68 L.Ed.2d 289 (1981), *aff'd after remand,* 478 A.2d 1055 (D.C.1984).

relief only for prisoners incarcerated within the District or in District of Columbia correctional facilities, *see* D.C.Code § 16–1901; *I.B. v. District of Columbia Dep't of Human Resources,* 287 A.2d 827, 828–29 (D.C. 1972); *Monteer,* 556 F.2d at 881. A court may not grant such relief unless it has personal jurisdiction over the custodian of the prisoner. *See, e.g., Schlanger v. Seamans,* 401 U.S. 487, 491, 91 S.Ct. 995, 998, 28 L.Ed.2d 251 (1971). The trial court, therefore, properly dismissed for lack of jurisdiction under this alternative theory. Appellant, however, is free to address his legal and equitable arguments to the proper court in California.

*Judgment dismissing motion for lack of jurisdiction affirmed.*